UNITED STATES BANKRUPTCY COURT

DISTRICT OF VERMONT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BIRCH WOOD, INC. | ) | Case No.  18-10184- cab |
| | ) | *Chapter 11 case* |
| | ) | |
| Debtor in Possession. | ) | |

---

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (1) APPROVING THE SALE OF LAND AND PREMISES LOCATED AT 327 FLETCHER SCHOOLHOUSE ROAD, SOUTH WOODSTOCK, VERMONT, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO 11 U.S.C. SECTION 363(f), FED.R.BANKR.P. 6004(C), AND VT. LBR 6004-1, TO LAURA E. GREEN AND CHRISTOPHER J. ROTHERMEL, OF ROSWELL GEORGIA FOR THE PURCHASE PRICE OF $2,762,500; AND (II) APPROVING THE TERMS AND CONDITIONS OF THE PROPOSED SALE**

---

Birch Wood, Inc., the Chapter 11 Debtor in Possession (the "Debtor" or "Debtor in Possession"), requests the entry of an Order: (i) authorizing the Debtor in Possession to sell certain real property assets of the bankruptcy estate, which is the land and premises located at 327 Fletcher Schoolhouse Road, South Woodstock, Vermont (the "Sale Property"), free and clear of any interest in the Sale Property of any entity other than the Debtor in Possession's bankruptcy estate (the "Estate")  and approving the terms and conditions of the proposed sale of the Sale Property to Laura E. Green and Christopher J. Rothermel, of Roswell, Georgia for the negotiated purchase price of Two Million, Seven Hundred and Sixty Two Thousand and Five Hundred Dollars ($2,762,500). This Motion is made in accordance with 11 U.S.C. § 363(f), Fed.R.Bankr.P. 6004(c), and Vt. LBR 6004-1.

## JURISDICTION AND VENUE

1.        The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334.

Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this

proceeding is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.


## BACKGROUND


2.        The Debtor commenced this case by filing a voluntary petition under chapter 11

of the Bankruptcy Code on May 1, 2018 (the "Petition Date").  On May 1, 2018, the Debtor

became the Chapter 11 Debtor in Possession with such rights, powers and duties pursuant to

Section 1107 of the Bankruptcy Code.

3.        On the Petition Date, the Debtor owned the Sale Property, consisting of a home

and 25.8 acres located at 327 Fletcher Schoolhouse Road, South Woodstock, Vermont, known as

the Bybrook Farm which is now an asset of the Estate pursuant to § 541(a) of the Bankruptcy

Code.

4.        Prior to the Petition Date, the Debtor was subject to a non-judicial foreclosure

action by Northborough Capital Partners, LLC ("NCP"), as the holder of a first mortgage against

the sale property, for an alleged amount due as of May 1, 2018 less any partial payments or

suspense balance of $1,800,595.68, which amount excludes legal fees and costs in scheduling of

the foreclosure sale.[1]

5.        The Debtor, prior to and subsequent to the Petition Date, had engaged the services

of Williamson Group Sotheby's International Realty as Real Estate Listing Agency and Carol

[1] See NCP's Motion to Dismiss [ECF #14] filed June 19, 2018, ¶7.

Wood as Real Estate Listing Agent ("Realtor") for the Sale Property[2] which property was listed with an asking price of $2,925,000.00. The property prior to the Petition Date had been listed at $3,200,000.00.

      6.      On or about July 10, 2018, with the assistance of the Realtor, Laura E. Green and Christopher J. Rothermel ("Buyers") made an offer for the purchase of the Sale Property under a Purchase and Sale Contract, ("Sale Contract")  as subsequently supplemented by Addendum dated July 21, 2018, for the negotiated sum of $2,762,500.00, which sale, beside inspection contingencies, is contingent upon Court approval. A copy of the Purchase and Sale Contract with Addendum is attached as Exhibit A.

      7.      The Sale Property, consisting of a home and 25.8 acres located at 327 Fletcher Schoolhouse Road, South Woodstock, Vermont, known as the Bybrook Farm, is all and the same land and premises acquired by the Debtor by Quit Claim deed of Gary and Angela Moore, dated March 9, 2018, filed for record March 13, 2017 in Book 259, page 185 of the Town of Woodstock land records, and the property is more specifically in Schedule A set forth in Exhibit B attached hereto.

      8.      Contemporaneous with the filing of this Sale Motion, the Debtor has also proceeded with the filing of its Disclosure Statement and Plan of Reorganization in which the Plan also contemplates proceeding with this proposed sale to  Laura E. Green and Christopher J. Rothermel under the Sale Contract.

      9.      Debtor's proposal for selling the Sale Property is explained in the section of this Motion entitled Approval of Sale Procedures.

---

[2] See Debtor's Application for Order to Employ Real Estate Listing Agency [ECF#10] filed May 22, 2018, as approved by Order [ECF#11] docketed May 23, 2018.

## OTHER PARTIES ASSERTING LIENS AGAINST SALE PROPERTY

10.     On the Petition Date, the Sale Property was subject to the following encumbrances of record (collectively, the "Encumbrances"):

a.      Current and delinquent real estate taxes (the "Real Estate Taxes") are assessed to the Sale Property.  The delinquent portions of the Real Estate Taxes total $28,425.06, representing the unpaid 2017-2018 tax installments due November 3, 2017 and May 4, 2018. (These amounts were obtaianed from the Town of Woodstock Tax Bookkeeper on Tuesday, August 07, 2018, which amount is good through September 4, 2018. This amount will increase by the date of the proposed sale.)

b.      Mortgage to Northborough Capital Partners LLC ("NCP") in the original principal amount of $1,600,000, dated March 9, 2017 and recorded on March 13, 2017 in Book 259, Page 187-196 of the Town of Woodstock Land Records (the "NCP Mortgage").

c.      Mortgage to Paul Frank & Collins, P.C. and Whelan, Corrente, Flanders, Kinder & Siket, LLP in the original principal amount of $184,916.54, dated December 8, 2016 and recorded in Book 98, Page 195 of the Town of Brookfield Land Records (the "PFC-WCFKS Mortgage"), which a payment was made against such mortgage with the proceeds from the  NCP loan closing in the amount of $160,646.07 which left a remaining balance of approximately $100,000. Paul Frank & Collins, P.C. and Whelan, Corrente, Flanders, Kinder & Siket, LLP in conjunction with NCP closing, subordinated their mortgage interest by Subordination Agreement dated March 9, 2017 and filed for record on March 13, 2017 in Book 259, pages 183-184.

## RELIEF REQUESTED

### A.    Sale Free and Clear of Any Interest Other Than the Estate

11.    The Debtor in Possession seeks authority to sell the Sale Property free and clear of all liens, claims, and other interests, including the Encumbrances, with the liens to attach to the proceeds.

12.    Section 363(f) of the Bankruptcy Code provides as follows:

> (f)    The trustee may sell property under subsection (b) or (c) of this section free and clear of any interests in such property of an entity other than the estate, only if
> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

13.    Upon information and belief,  junior lienholders, Paul Frank & Collins, P.C. and Whelan, Corrente, Flanders, Kinder & Siket, LLP; unsecured claimant, White County Holding LLC; and equity shareholders, Gary and Angela Moore, will consent to the proposed sale. The Debtor in Possession is uncertain as to NCP's position as to the sale, especially as to the proposed terms of sale as it relates to the NCP claim.

14.    The Debtor in Possession alleges as to the NCP claim, and as basis for the granting of the proposed sale over any objection, the price at which such property is to be sold is greater than the aggregate value of all liens on the property; and the lien of NCP is in bona fide dispute, as partially set forth in the Debtor in Possession's Objection to Northborough Capital Partners, LLC Motion to Dismiss Bankruptcy Case, [ECF#19] filed July 13, 2018.[3]

---

[3] As noted in the Objection, the Debtor in Possession believes that the NPC loan transaction may violate Vermont Licensed Lender law, which if the Debtor is correct, may result in penalties which prevent the potential collection of

15.     The Debtor in Possession believes and affirms that the proposed sale complies with the requirements of §363(f), as it is an arms-length transaction, entered in good faith, and with the belief that the proposed sale is at a fair and reasonable value based upon the Debtor's pre-petition and post-petition marketing and the price at which the property is to be sold is greater than the aggregate value of all liens upon the property; and that a bona fide dispute exists as to the first mortgage interest of NCP as potentially being in violation of the Vermont Licensed Lender laws, and or other possible issues.

## B.    **Approval of Sale Procedures**

16.     The Debtor in Possession proposes, and by this Motion, seeks authority, to sell the Sale Property in accordance with the following procedures:

     i.      The Debtor proceeds to take all steps necessary as to move forward with the proposed sale, as to meet all Sale Contract requirements and contingencies as to close upon such loan at such time as the Buyers are prepared to close following entry of an Order approving such sale under this Motion, or Order Confirming the Debtor's Chapter 11 plan providing for the sale of the Sale Property. Pursuant to the Sale Contract the closing may occur sooner than, but otherwise not later than, October 31, 2018.

     ii.     The Debtor will serve the Sale Motion and Notice of Motion upon all creditors of the Estate.

---

interest and related costs, and at worst, collection of principal pursuant to 8 V.S.A. §2251(d), in addition to other possible issues relative to the loan transaction.

iii.    At closing, or at such time under the Chapter 11 Plan providing for such

closing and effective date, the Debtor will proceed to pay all necessary and

required closing costs, and proceed with the payment of the claim of the Town

of Woodstock for delinquent (approximately $30,000 as of October 31, 2018,

based upon $28,425.06 through September 4, 2018) and any current pro-ration

of real estate taxes estimated at approximately $8,187.08, being a pro-rata

share from July 1 to October 31 at $66.56 per day based upon the 2017 taxes,[4]

iv.    Escrowing the sum of not less than $2.25 million for the NCP claim,

 v.    Payment of the subordinate liens of Paul Frank & Collins, P.C. and Whelan,

Corrente, Flanders, Kinder & Siket, LLP in their allowed amount of

approximately $100,000.00.

vi.    Escrow of the balance of the funds on behalf of the administrative claims,

unsecured creditors, and the equity holders, pending further order of the

Court.

vii.    The Debtor shall provide a report of sale for approval within 14 days of the

completion of sale for approval, in the event the sale is not conducted under

the Chapter 11 plan, if confirmed and effective by the time of closing.

---

[4] Per the Town of Woodstock tax collector the tax rate has not yet been set or made public for 2018-2019, and suggested using the prior year for best estimate calculations.

## **<u>OBJECTIONS</u>**

17.     Persons objecting to the sale of the Sale Property as set forth above, free and clear of all interests, liens, and encumbrances, must file a written objection with Clerk of the **Court, 11 Elmwood Avenue, Burlington, Vermont 05401**, and effectuate service of a copy thereof on Raymond J. Obuchowski at P.O. Box 60, Bethel, Vermont 05032, both on or before **4:00 p.m. (Eastern) on September 7, 2018.**

18.     A hearing will be held on September 14, 2018**, at 11:00 a.m.**, at the **U.S. Bankruptcy Court, U.S. Post Office and Courthouse, 151 West Street, Rutland, Vermont**, to hear any parties who have filed written objections as set forth above.

**WHEREFORE**, the Debtor in Possession requests the entry of an Order (i) authorizing it to sell the Sale Property, free and clear of any interest in the Sale Property of any entity other than the Estate; and (ii) approving the terms and conditions of the disposition of Sale Property and proceeds of sale as outlined above.

**DATED** at Royalton, Vermont: Tuesday, August 07, 2018

**BIRCH WOOD, INC.**

By:     /s/ Raymond J. Obuchowski_____
Raymond J. Obuchowski, Esq.
Obuchowski Law Office
PO Box 60, Route 107
Bethel, VT 05032
(802) 234-6244
(802) 234-6245 telefax
ray@oeblaw.com

## ADDENDUM TO PURCHASE AND SALE CONTRACT

NOW COME the parties to a Purchase and Sale Contract involving property located at 327 Fletcher Schoolhouse Road, Woodstock, Vermont, Laura E. Green and Christopher Rothermel (Buyer) and Gary Moore and Angela Moore (Seller) and hereby agree that the Contract shall be amended as follows:

1. The name of the Seller is Birch Wood, Inc.   Gary Moore is the president

2. The Seller's obligation to sell is contingent upon Court approval.

3. The Seller may remove the Waterford Chandelier in the dining room, the Venetian Chandeliers in the entry way and the Venetian Chandelier in the small sitting room

Dated at _____Roswell_____, Georgia_____ this 21__ day of July, 2018.

_____
dotloop verified
07/23/18 8:36AM EDT
WJJG-ZVQ1-7ATG-ODKD

Laura E. Green

_____
*Christopher J. Rothermel*
dotloop verified
07/23/18 10:45AM EDT
CUZQ-X4BQ-1MHR-LCFD

Christopher Rothermel

Dated at Woodstock, Vermont this _7_ day of July, 2018

_____
Gary Moore

*Angela Moore*
_____
Angela Moore

_____
Gary Moore, President Birch Wood, Inc.

# EXHIBIT "A"

 

# PURCHASE AND SALE CONTRACT

This Is A Legally Binding Contract. If Not Understood, Legal, Tax Or Other Counsel Should Be Consulted Before Signing.

| Purchaser's Full Name | Mailing Address | Telephone # / Fax # / E-Mail Address |
|---|---|---|
| Laura E. Green | 890 Atlanta Street, #240, Roswell, GA  30075 | |
| Christopher J. Rothermel | 890 Atlanta Street, #240, Roswell, GA  30075 | |
| | | |
| | | |

| Seller's Full Name | Mailing Address | Telephone # / Fax # / E-Mail Address |
|---|---|---|
| Angela Moore | P.O. Box 68, South Woodstock, VT  05071 | |
| Gary Moore | P.O. Box 68, South Woodstock, VT  05071 | |
| | | |
| | | |

1. **Purchase and Sale Contract:** This Purchase and Sale Contract (Contract) is made by and between:
Angela Moore and Gary Moore _____ (Seller) and
Laura E. Green and Christopher J. Rothermel _____ (Purchaser).
Purchaser agrees to purchase and Seller agrees to sell the Property described herein at the price and on the terms and conditions stated in this Contract.

2. **Total Purchase Price:** Two Million Seven Hundred and Sixty Two Thousand and Five Hundred _____ U.S. Dollars ($2,762,500.00 _____ )

3. **Contract Deposit:** $ 10,000.00 _____ (U.S. Dollars) as evidenced by ☑ Personal check ☐ Bank check ☐ Cash ☑ Wire transfer
Additional Contract Deposit of $ 90,000.00 _____ (U.S. Dollars) is due within sec 10 calendar days after the Contract Date set forth in Section 30. Unless otherwise agreed in writing, the pendency of any contingencies or special conditions in this Contract does not suspend or postpone Purchaser's obligation to make any required additional Contract Deposit. All Contract Deposits shall be held by:
Williamson Group Sothebys Intl. Realty _____ ("Escrow Agent"). If no binding Contract is created by the Contract Date or if Purchaser withdraws any pending offer prior to Seller's acceptance of that offer and notification thereof, all Contract Deposits shall be promptly returned to Purchaser.

4. **Description of Real Property:** For purposes of this Contract, the Property is described as follows:
A. Property Address: 327 Fletcher Schoolhouse Road _____ ; and/or
          Street                                      City/Town
B. Seller's Deed recorded in Volume 206 _____ at Page(s) 8 _____ of the Woodstock _____ Land Records; and/or
C. Parcel ID Number: _____ ; and/or
D. SPAN Number:  78625010205 _____ ;
E. The Property is further described as:
Single family residence with a partially finished barn, guesthouse, pond and outbuilding on 25.8 acres.
**NOTE:** Not every Property Description choice is required in order to form this Contract. The validity and enforceability of this Contract is not affected by the omission of one or more of the above choices, provided at least one choice is filled in. The deed delivered by Seller at Closing will govern the legal description of the real property to be conveyed under this Contract.

5. **Closing:** Closing and transfer of title shall occur on 10/31/2018 _____ at a mutually agreed time and place. Closing may occur earlier if Seller and Purchaser agree in writing. Neither party shall be obligated to extend the date set for Closing.

Seller's Initials

Purchaser's Initials

6. **Financing Contingency:** Purchaser's obligation to close under this Contract ☐ is ☑ is not subject to a financing contingency that Purchaser obtain mortgage financing in the amount of _____% of the purchase price for a term of ___ years at an interest rate not higher than _____% fixed for the term of the loan or _____% variable on the date of closing with not more than _____ points to be paid at Closing. Purchaser agrees to act diligently to obtain such financing and shall, within _____ calendar days after this Contract is executed by Seller and Purchaser and notice thereof is provided to Purchaser in the manner required by Section 29, submit a complete and accurate application for first mortgage financing to at least one mortgage lender or mortgage broker currently providing or placing such loans requesting first mortgage financing in the amount and on the terms set forth above. If Purchaser fails to timely submit such an application, this financing contingency is waived by Purchaser. If, despite best efforts, Purchaser is denied financing by, or is unable to obtain  financing approval from, the mortgage lender upon the terms set forth above, on or before _____ , Purchaser (but not Seller) shall have the right to TERMINATE this Contract, provided Purchaser gives  Seller written notification thereof, together with a copy of the lender's denial letter or letter from the lender explaining the reasons for Purchaser's inability to obtain such financing, within four (4) calendar days after the above date in the  manner required by Section 29. If Purchaser fails to do so, Purchaser's right to terminate this Contract on account of the Financing Contingency is waived.

Purchaser understands that strict adherence to all timelines and other requirements of any Lender, including Purchaser's "Notice of Intent to Proceed with Loan" is critical to satisfy this Financing Contingency.  Any failure to do so may adversely affect Purchaser's rights and obligations under this Contract.

In the event Purchaser terminates this Contract in accordance with the provisions of this Section, all Contract Deposits shall be forthwith returned to Purchaser, the Contract shall be terminated and shall be of no further force and effect.  In such case, Seller and Purchaser agree to execute and deliver to Escrow Agent an authorization for delivery of all Contract Deposits to Purchaser.  If Purchaser's obligation to close <u>IS</u> subject to a financing contingency, Purchaser provides the following information:

A. Purchaser ☐ has ☑ has not consulted with a mortgage lender or mortgage broker about mortgage financing as of the date of Purchaser's offer.
B. Purchaser has obtained a mortgage lender's pre-approval or pre-qualification letter.  ☐ Yes ☑ No.
If Purchaser's obligation to close <u>IS NOT</u> subject to a financing contingency, Purchaser represents to Seller that Purchaser has sufficient cash or liquid assets to close on the purchase of the Property.

7. **Lead-Based Paint:**  Based upon representations made by Seller and Purchaser's own investigation and information, it is agreed that the Property ☑ is ☐ is not  pre-1978 residential real estate and therefore  ☑ is ☐ is not  subject to Federal (EPA/HUD), State and, if applicable, Municipal Lead-Based Paint Regulations. If the Property is pre-1978 residential real estate, the parties must execute a Lead-Based Paint Addendum with required disclosures, which shall become part of this Contract. Lead-Based Paint Addendum And Disclosures attached. ☑ Yes ☐ No.

8. **Property Inspection Contingency:** Purchaser's obligation to close under this Contract  ☑ is ☐ is not subject to a property inspection contingency.  If this Contract is subject to a property inspection contingency, the parties must execute a **Property Inspection Contingency Addendum** which shall become part of this Contract.

9. **Addendum/Supplemental Conditions to Contract:**  Additional terms to Contract are set forth in the Addendum (or Addenda) or Supplemental Conditions signed by Seller and Purchaser.  ☑ Yes ☐ No.

10. **Special Conditions:**
Please see Addenda Attached

11. **Condominium/Common Interest Community:**  If the Property is a condominium unit, part of a common interest community, planned community, planned unit development (PUD) or other property subject to the Vermont Common Interest Ownership Act, a Common Interest Ownership Addendum is required.  Common Interest Ownership Addendum attached.  ☐ Yes ☑ No.

Seller's Initials ☐ ☐ ☐ ☐        Purchaser's Initials ☐ ☐ ☐ ☐

12. **State and Local Permits:** The parties acknowledge that certain state and local permits may govern the use of the Property. To the best of Seller's knowledge, the Property is in compliance with any existing permits. Further, Seller has not received notice of violation(s) of any State or Local permit that has not been cured or resolved, unless otherwise disclosed in writing.

13. *Limitation of Liability: Seller and Purchaser agree that the real estate broker(s) identified in Section 31 have provided both Seller and Purchaser with benefits, services, assistance and value in bringing about this Contract. In consideration thereof, and in recognition of the relative risks, rewards, compensation and benefits arising from this transaction to the real estate broker(s), Seller and Purchaser each agree that no broker, or any of its agents, associates or affiliates, shall, in any event, be liable to either Purchaser, Seller or both, either individually or jointly and severally, in an aggregate amount in excess of the compensation paid to such broker on account of this transaction or $5,000, whichever is greater, by reason of any act or omission, including negligence, misrepresentation, error or omission, or breach of any undertaking whatsoever, except for an intentional or willful act. This limitation shall apply regardless of the cause of action or legal theory asserted against the real estate broker(s) unless the claim is for an intentional or willful act. This limitation of liability shall apply to all claims, losses, costs, damages or claimed expenses of any nature whatsoever from any cause or causes, except intentional or willful acts, so that the total aggregate liability of any real estate broker identified in Section 31 hereof shall not exceed the amount set forth herein. Seller and Purchaser each agree that there is valid and sufficient consideration for this limitation of liability and that the real estate broker(s) are the intended third-party beneficiaries of this provision.*

14. **Possession:** Possession and occupancy of the premises, together with all keys/access devices or codes to the premises and any property or fixtures that are part of the sale, shall be given to Purchaser at Closing unless otherwise agreed in writing. Seller shall leave the premises broom clean, free from all occupants, and shall remove all personal property not being sold hereunder, together with the personal property of all occupants. Seller agrees to permit Purchaser to inspect the premises within 24 hours prior to the date set for Closing to ensure compliance with this provision.

15. **Payment of Purchase Price:** Payment of the Purchase Price is due at Closing and shall be adjusted for any Contract Deposits held by Escrow Agent to be disbursed at Closing, taxes or tax withholding applicable to Seller as described in Sections 17 and 18 of this Contract, or as required by other applicable law, Closing Adjustments under Section 26 of this Contract, compensation due to Seller's real estate broker, and any other items agreed to in writing by Seller and Purchaser. The purchase price, after adjustments are made, shall be paid to Seller in cash, by wire transfer, electronic transfer, certified, treasurer's or bank teller's check, check drawn on the trust or escrow account of a real estate broker licensed in the State of Vermont, or, check drawn on the trust or escrow account of an attorney licensed in the State of Vermont, or any combination of the foregoing. Seller and Purchaser agree that, prior to Closing, upon request, the brokers named in Section 29 of this Contract shall be provided with a copy of the proposed TILA-RESPA Closing Disclosure (CD) pages 2 and 3 (Closing Cost Details and Summaries of Transactions) and, at Closing, upon request, said brokers shall be provided a copy of the final CD(s) signed by Seller and Purchaser. In the event Seller requests funds by wire transfer or by certified, treasurer's or bank teller's check, Seller shall provide notice thereof to the attorney or settlement agent closing the transaction within a reasonable time prior to the date scheduled for Closing. All fees or charges incurred to enable funds to be paid to Seller by wire transfer, certified, treasurer's or bank teller's check shall be paid for at Closing by Seller. **Unless otherwise agreed to in writing, or as directed by the attorney or settlement agent closing the transaction, all Contract Deposits held by Escrow Agent shall be paid directly to Seller at Closing and credited toward the total proceeds to be paid to Seller at Closing. In the event the attorney or settlement agent closing the transaction requests Escrow Agent to deliver the Contract Deposits prior to the date set for Closing, Seller and Purchaser hereby authorize Escrow Agent to do so, provided the Contract Deposit funds are made payable to the closing attorney or settlement agent's trust or escrow account and Escrow Agent reasonably believes the Closing shall occur as scheduled.**

16. **Deed:** Unless otherwise agreed to in writing, Seller shall deliver to Purchaser at Closing a Vermont warranty deed, prepared and paid for by Seller, conveying marketable title to the Property as defined by Vermont law.

17. **Property Transfer Tax/Land Gains Tax/Act 250 Disclosure Statement:** Purchaser shall pay any Vermont Property Transfer Tax due on account of the sale of the Property. If any Vermont Land Gains Tax is due as a result of the sale of the Property, the Seller shall pay such tax as may be due, except as otherwise provided by law or by addendum to this Contract. At or prior to closing, Seller shall provide Purchaser with satisfactory proof either that there is no such tax due or that the tax has been paid in full, or shall provide a certificate from the Vermont Department of Taxes specifying the amount of any tax that may be due as a result of the sale. In the event Seller is required to provide Purchaser with an Act 250 Disclosure Statement and fails to provide such a statement or provides the statement in an untimely manner, Purchaser's closing on this transaction and acceptance of Seller's deed shall constitute a waiver and release of Purchaser's right to declare this Contract unenforceable, to rescind this transaction or to pursue Seller for damages arising out of the failure to provide an Act 250 Disclosure Statement.

18. **Income Tax Withholding Requirements if Seller is a Nonresident of Vermont and/or Subject to Tax Under the U.S. Foreign Investment in Real Property Tax Act:** If Seller is a nonresident of Vermont, unless a withholding certificate is issued by the Vermont Commissioner of Taxes in advance of the closing, Purchaser shall withhold 2.5 percent of the total purchase price and file a withholding tax return with the Vermont Department of Taxes. In addition, if the sale of the Property subjects Seller to the payment of federal tax under the Foreign Investment in Real Property Tax Act (FIRPTA), unless a withholding certificate is issued by the Internal Revenue Service, Purchaser shall withhold 15 percent of the total purchase price (35% for foreign corporations) and file a withholding tax return with the Internal Revenue Service. If Purchaser fails to withhold such taxes when required to do so, Purchaser may be liable to the respective taxing authorities for the amount of such tax. Purchaser shall have the right to reasonably request evidence

Seller's Initials     Purchaser's Initials 

that Seller is exempt from payment of either tax in the form of a certificate of residence or non-foreign status. In the event Purchaser is determined to be liable for the payment of either tax, Seller shall indemnify and hold Purchaser harmless from all such liability together with any interest, penalties and reasonable expenses, including attorney's fees, incurred by Purchaser.

19. **Purchaser's Examination of Title:** Purchaser, at his or her sole cost and expense, shall cause the title to the Property to be examined and shall notify Seller in writing, prior to the date set for Closing, of the existence of any encumbrances or defects which are not excepted in this Contract which render title unmarketable as defined by Vermont law. In such event, Seller shall have thirty (30) calendar days from the time Seller receives such notice to remove the specified encumbrances or defects. Promptly following receipt of such notice, Seller shall exercise reasonable efforts and diligence to remove or cure the specified encumbrances or defects. If, at the expiration of thirty (30) calendar days from the receipt of such notice, or on the date set

for Closing, whichever is later, Seller is unable to convey marketable title free and clear of such encumbrances or defects, Purchaser may terminate this Contract, and, if so, shall receive all Contract Deposits and, in addition, may pursue all legal and equitable remedies provided by law, including any damages incurred after the thirty (30) day period referred to above.

20. **Default:** If Purchaser fails to close as provided herein, or is otherwise in default, Seller may terminate this Contract by written notice as provided in Section 29 and claim all Contract Deposit(s) as liquidated damages, or may elect to pursue all legal and equitable remedies provided by law. In the event of Purchaser's default, Seller's damages may be difficult to initially evaluate due to future events that cannot be predicted. The Contract Deposit(s) is agreed to be a reasonable estimate of at least some of Seller's damages resulting from Purchaser's default. Seller's right to claim the Contract Deposit(s) is not intended to be a penalty for Purchaser's default nor an incentive for Purchaser to perform its obligations under this Contract. If Seller fails to close, or is otherwise in default, Purchaser may terminate this Contract by written notice as provided in Section 29 and claim all Contract Deposit(s) as liquidated damages or subject to the provisions of Section 19 relating to the thirty (30) calendar day cure period for title encumbrances or defects, elect to pursue all legal and equitable remedies provided by law. In the event legal action is instituted arising out of a breach of this Contract, for payment or return of the Contract Deposit(s) or to obtain any available legal or equitably remedy, the substantially prevailing party shall be entitled to reasonable attorney's fees and court costs.

21. **Contract Deposits:** At Closing and transfer of title, Escrow Agent shall disburse all Contract Deposits. In the event Purchaser terminates this Contract under the specific provisions hereof entitling Purchaser to terminate, upon written demand, Escrow Agent shall refund all Contract Deposits to Purchaser in accordance with laws and regulations applicable to Escrow Agent. In the event either Seller or Purchaser does not perform and fails to close on the terms specified herein, this shall constitute a default. In the event of a default undisputed by Seller and Purchaser, upon written demand, Escrow Agent shall pay all Contract Deposits to the non-defaulting party in accordance with laws and regulations applicable to Escrow Agent. In such case, Seller and Purchaser agree to execute and deliver to Escrow Agent an Authorization for Delivery of All Contract Deposits to the party entitled to such Deposits. In the event Seller or Purchaser provides written notice to the other party of a claimed default and demands delivery of all Contract Deposits on account of such claimed default, if the party to whom such notice is sent disagrees, that party shall provide notice to the party demanding all Contract Deposits and to the Escrow Agent named in Section 3 of this Contract that it demands to mediate the dispute under Section 23 of this Contract. **If such demand to mediate is not sent within twenty-one (21) calendar days from the date written notice of a claimed default was sent, the failure to send such demand to mediate shall constitute authorization and permission under this Contract for Escrow Agent to pay all Contract Deposits to the party claiming default and demanding the Contract Deposits without further notice, documentation or authorization from either Seller or Purchaser.** Payment of all Contract Deposits by the Escrow Agent under such circumstances shall constitute the final resolution and disposition of all Contract Deposits. Seller and Purchaser acknowledge and agree that resolution of all Contract Deposits in this manner fully and completely satisfies all laws, regulations and obligations applicable to Escrow Agent and agree to release, discharge, hold harmless and indemnify Escrow Agent acting in good faith pursuant to this section. In the event mediation is demanded and the dispute over all Contract Deposits is resolved by mediation, Seller and Purchaser agree to instruct Escrow Agent, in writing, as to the disposition and payment of all Contract Deposits. In the event the dispute over all Contract Deposits is not resolved by mediation, Escrow Agent shall continue to hold all Contract Deposits in escrow or may, at any time, pay all Contract Deposits into court for the purpose of determining the rights of the parties to all Contract Deposits. All costs and expenses of any such action, including attorney's fees incurred by Escrow Agent, shall be borne jointly and severally by Seller and Purchaser irrespective of the amount of all Contract Deposits and irrespective of which party ultimately prevails in the dispute. In the event of a dispute concerning default or payment of all Contract Deposits by Escrow Agent, Escrow Agent shall not be personally liable to either party except for bad faith or gross neglect. In the event a claim other than for bad faith or gross neglect is asserted against Escrow Agent, the parties shall jointly and severally indemnify and hold Escrow Agent harmless from all loss or expense of any nature, including attorney's fees, arising out of the holding of all Contract Deposits irrespective of the amount of all Contract Deposits.

22. **Terms and Conditions of Escrow Agent Holding Contract Deposits:** Seller and Purchaser acknowledge that Vermont law provides that real estate brokers shall place any Contract Deposits held by them that are reasonably expected to earn less than One Hundred Dollars ($100.00) in interest in a pooled interest-bearing trust account or escrow (IORTA) account. Interest accrued on such Contract Deposits is remitted to the Vermont Housing Finance Agency (VHFA) to be used in the Agency's single family home mortgage programs. Seller and Purchaser further acknowledge that Vermont law also provides that real estate brokers shall place any Contract Deposits held by them that are reasonably expected to earn interest more than One Hundred Dollars ($100.00) in interest in an individual interest-bearing account. Acknowledging the above advisements, for the convenience of the transaction, Seller and Purchaser agree that unless otherwise agreed in writing, all Contract Deposits held by Escrow Agent shall nonetheless be placed in a pooled interest-bearing IORTA account and the interest accrued thereon shall be remitted to VHFA even if the interest thereon is expected to earn more than One Hundred Dollars ($100.00).

Seller's Initials [ACM] [ ] [ ] [ ]    Purchaser's Initials [ ] [ ] [ ] [ ]

23. **Mediation of Disputes:** In the event of any dispute or claim arising out of or relating to this Contract, to the Property, or to the services provided to Seller or Purchaser by any real estate agent who brought about this Contract, it is agreed that such dispute or claim shall be submitted to mediation prior to the initiation of any lawsuit. The party seeking to mediate such dispute or claim shall provide notice to the other party and/or to the real estate agent(s) with whom mediation is sought and thereafter the parties and/or real estate broker(s) with whom mediation is sought shall reasonably cooperate and agree on the selection of a mediator. A party or real estate broker not involved in the dispute or claim shall not be required to participate in the mediation. The real estate agent(s) who brought about this Contract can be of assistance in providing information as to sources for obtaining the services of a mediator. Unless otherwise agreed to in writing, the parties and any real estate agent(s) involved in the mediation shall share the mediator's fee equally. Seller, Purchaser and the real estate agent(s) who brought about this Contract acknowledge and understand that, although utilizing mediation in an effort to resolve any dispute or claim is mandatory under this Contract, the function of the mediator is to assist the parties involved in the mediation in resolving such dispute or claim and not to make a binding determination or decision concerning the dispute or claim. This provision shall be in addition to, and not in replacement of, any mediation or alternative dispute resolution system required by an order or rule of court in the event the dispute results in a lawsuit. **In the event a lawsuit is initiated without first resorting to mediation as required by this Section, any party or real estate agent named in Section 31 of this Contract shall be entitled to reimbursement of the reasonable cost of attorney's fees or other expenses arising out of such lawsuit until the mediation required by this Section occurs.**

24. **Fixtures and Personal Property:** Insofar as any of the following items are now located on and belong to the Property, they shall be deemed to be fixtures and are included in this sale; heating, lighting and plumbing fixtures; storm windows and doors; screens and screen doors; curtain rods, window shades and blinds; shrubbery and trees; wall-to-wall carpeting, television antennae and satellite dish. **NO PERSONAL PROPERTY, INCLUDING TELEVISION(S) AND TELEVISION MOUNTING BRACKET(S), IS INCLUDED IN THIS SALE UNLESS EXPRESSLY IDENTIFIED AND DESCRIBED IN THIS CONTRACT OR IN ANY SCHEDULE ATTACHED HERETO.** Any personal property transferred under this Contract is sold "As Is" with no warranties of any kind, express or implied, other than the warranty of title.

25. **Risk of Loss/Insurance:** During the period between the date of this Contract and the transfer of title, risk of loss shall be on Seller. Seller shall continue to carry such fire and extended coverage insurance as is presently maintained on the buildings and improvements located on the Property. In the event any of the buildings or improvements are destroyed or damaged and are not restored to their present condition by the date set for closing, Purchaser may either accept title to the Property and receive the benefit of all insurance monies recovered on account of such damage or may terminate this Contract and be entitled to the return of all Contract Deposits as Purchaser's sole remedy.

26. **Closing Adjustments:**
    **A.** Real property taxes, municipal taxes, fees and assessments, condominium assessments, rents, utilities or similar items shall be apportioned and prorated at Closing between Seller and Purchaser. Seller shall be responsible **for closing adjustments and expenses until the day before Closing. Purchaser shall be responsible for closing adjustments and expenses on and after the day of Closing.**
    **B.** Should any tax, charge, rate or assessment be undetermined on the date of Closing, the last determined tax, charge, rate or assessment shall be used for purposes of apportionment and proration.
    **C.** Any payment under the Vermont Statewide Education Property Tax which reduces the real estate property tax on the Property, either for the current tax year or thereafter, shall be allocated and paid to Seller at Closing unless the Seller and Purchaser otherwise agree in writing.
    *It is understood and agreed that the amount of any such payment is the property of the Seller and shall not be applied to the apportionment and proration of taxes. Purchaser is advised that the payment to be made to Seller at Closing on account of any applicable Statewide Education Property Tax may require Purchaser to have available funds at Closing that might significantly exceed funds for closing adjustments that would otherwise be required.*
    **D.** Purchaser shall reimburse Seller at Closing for fuel at the Property at the current rate charged by the Seller's fuel supplier at the time of Closing, with the exception of propane which shall be handled outside of Closing by Seller and Purchaser as set forth in Title 9 V.S.A. Section 2461b, with reference to the Vermont Attorney General Consumer Protection Rule (CP) 111, Regulation of Propane.
    **E.** The net amount of the above adjustments shall be added to or deducted from the amount due to or owed by Seller at Closing.

27. **Effect:** This Contract is for the benefit of and is binding upon Seller and Purchaser, and their respective heirs, successors, administrators, executors and assigns. This Contract, together with any written and signed addenda thereto, contains the entire agreement by and between Seller and Purchaser and supersedes any and all prior agreements, written or oral. This Contract shall be governed by the laws of the State of Vermont.

28. **Modification and Amendment:** No change, modification, amendment, addition or deletion affecting this Contract shall be effective unless in writing and signed by Seller and Purchaser.

29. **Written Notices/Effective Delivery:** Any notice required to be in writing under this Contract (and any addenda or supplemental conditions thereto) must be signed by Seller, Purchaser, or their respective attorneys, by actual or electronic signature that complies with Federal and Vermont electronic signature laws. All such notices, other than those sent to the parties' respective attorneys, shall be effective only if sent to the address(es) (including email addresses) set forth in this Contract, by hand, courier, delivery service, facsimile transmission (fax), U.S. mail, or by a digitally signed or scanned, signed document or image sent by electronic transmission. **Emails without a digitally signed or scanned, signed document or image attached shall not be effective notice.** In the event notices are sent by hand, courier, delivery service or regular (not certified) U.S. mail, such notices shall be effective upon receipt. Text or telephonic notice shall not be effective to satisfy any required notice.

Seller's Initials    Purchaser's Initials 

**Any notice required to be sent to Seller shall be effective if sent to:**
- A real estate broker representing Seller (**Seller's Agency/Agent**) identified in Section 31 of this Contract at the address set forth below; or
- A broker's agent acting as agent of Seller's Agent (**Broker's Agency/Agent**) identified in Section 31 of this Contract at the address set forth below; or
- A Vermont attorney representing Seller in the transaction; or
- Seller at the address(es) set forth on Page 1 of this Contract.

**Any notice required to be sent to Purchaser shall be effective if sent to:**
- A real estate broker representing Purchaser (**Buyer's Agency/Agent**) identified in Section 31 of this Contract at the address set forth below; or
- A Vermont attorney representing Purchaser in the transaction; or
- Purchaser at the address(es) set forth on Page 1 of this Contract.

Broker representing Seller (**Seller's Agency/Agent**), if any:

| | | | |
|---|---|---|---|
| Williamson Group Sothebys Intl. Realty | | Carol Wood | |
| Agency | | Agent | |
| 24 Elm Street. Woodstock, VT  05091 | | | |
| Street Address/P.O. Box | City/Town | State | Zip |

carol.wood@williamson-group.com
Email                                                                   Fax No.

☐ **Broker's Agency/Agent**, if any, or

☑ **Buyer's Agency/Agent**, if any  (check one)

| | | | |
|---|---|---|---|
| Snyder Donegan Real Estate Group | | Zoe Washburn | |
| Agency | | Agent | |
| P.O. Box 161 South Main Street, Woodstock, VT 05091 | | | |
| Street Address/P.O. Box | City/Town | State | Zip |

zoe.hathornwashburn@snyderdonegan.com
Email                                                                   Fax No.

30. **Contract Date**. No binding contract shall be created or deemed to exist between Seller and Purchaser unless all terms and conditions of any offer(s) and/or counteroffer(s), including any addenda or supplemental conditions are agreed to in writing, **signed** (with any changes **initialed**) by **both** Seller and Purchaser and **notification** thereof provided in the manner required by Section 29 not later than 07/14/2018 _____ 12:00 ☐ A.M. ☑ P.M. EST/EDT which shall constitute the Contract Date regardless of the date(s) the Contract is signed by Seller and Purchaser. The **Contract Date** shall be the commencement date for computing any time periods in this Contract and any addenda or supplemental condition(s) to this Contract, which time periods shall be calculated as follows: the Contract Date shall not be counted; the first day after the Contract Date shall be the first day counted; Saturdays, Sundays and legal holidays shall be counted; and the final day shall be counted. Either party has the right to withdraw any offer made by that party prior to its acceptance and notification thereof given by the other party in writing. **In the event a binding contract is not made by the Contract Date, neither party shall have any obligations to the other party. Oral communication of any offer or oral notification of acceptance of any offer is not sufficient to create a legally binding contract.** Any document or notice required to be in writing shall be effective if signed by actual or electronic signature that complies with Federal and Vermont electronic signature laws. If a document or notice is required to be signed by a party or to be in writing, electronic transmissions that do not comply with such electronic signature laws are not effective.

31. **Efforts of Agent(s):**  Seller and Purchaser agree that the Agency/Agent(s) named in Section 29, and their respective efforts, brought about this Contract.

32. **Calendar Days/Counterparts:**  Whenever this Contract or an addendum or amendment thereto refers to a day or days, it shall be deemed to be calendar days. This Contract may be executed in two or more counterparts, each of which shall be deemed an original but all of which shall constitute one and the same Contract.

Seller's Initials                                    Purchaser's Initials

33. **Time is of the Essence:** Time is of the essence with respect to all obligations and undertakings of Seller and Purchaser under this Contract including the times for providing all notices required to be given. Failure to act within the time period required shall constitute a breach of this Contract or waiver of the contingency or condition sought to be exercised.

34. **Purchaser acknowledges receipt of the following documents:**
☑ Vermont Real Estate Commission Mandatory Consumer Disclosure
☑ Vermont Department of Health – Pamphlet – "Testing Drinking Water From Private Water Supplies" (if the Property is served by a private water system)
☑ Efficiency Vermont  - Pamphlet – "Home Energy Information"

### PURCHASER'S AGREEMENT TO PURCHASE

| Purchaser: | _(Signature)_ | 7/10/18 | 2:15 pm |
| | | Date and Time (EST/EDT) | |

| Purchaser: | _(Signature)_ | 7/10/18   9:12 AM |
| | | Date and Time (EST/EDT) |

| Purchaser: | | |
| | (Signature) | Date and Time (EST/EDT) |

| Purchaser: | | |
| | (Signature) | Date and Time (EST/EDT) |

### SELLER'S AGREEMENT TO SELL

| Seller: | _Angela Moore_ | onestop verified 07/14/18 9:05AM EDT 0C5H-CVEU-EFP7-4RXYJ |
| | (Signature) | Date and Time (EST/EDT) |

| Seller: | _(Signature)_ | 7/14/18   9:15 |
| | | Date and Time (EST/EDT) |

| Seller: | | |
| | (Signature) | Date and Time (EST/EDT) |

| Seller: | | |
| | (Signature) | Date and Time (EST/EDT) |



**VermontRealtors®**

## ADDENDUM ___A___ TO PURCHASE AND SALE CONTRACT

Purchase and Sale Contract between:

Angela Moore and Gary Moore _____ (Seller) and

Laura E. Green and Christopher J. Rothermel _____ (Purchaser).

Property Location 327 Fletcher Schoolhouse Road _____ (Property)
                          Street                                    City/Town

The Contract Date is 07/14/2018 _____ (insert date from Section 30 of Purchase and Sale Contract).

This addendum is as follows:

1. This offer is contingent upon approval from the Purchaser's Investment Group and such approval will be provided by no later than August 20, 2018. Should such approval not be granted by set timeframe then both parties have the right to terminate the contract with all escrow deposits returned in full to the Purchaser OR parties can choose to renegotiate terms.

2. The first escrow deposit will be provided by August 1, 2018. The second escrow deposit will be provided by August 20, 2018.

This Addendum constitutes a part of the above-referenced Contract. All terms and conditions set forth in the Contract shall remain as set forth in the Contract, except as may be modified by this or any other addendum to the Contract.

Seller: *Angela Moore*
dotloop verified
07/14/18 9:05AM EDT
AKRK-SBXP-RLVD-VJTL
(Signature)                    Date

Purchaser: [signature]
dotloop verified
07/13/18 5:29PM EDT
IAX7-HVQJ-NF7J-OS4M
(Signature)                    Date

Seller: [signature]   7/14/18 · 9:15
(Signature)                    Date

Purchaser: *Christopher J. Rothermel*
dotloop verified
07/13/18 5:56PM EDT
1SZ9-77P5-VQJT-WT34
(Signature)                    Date

Seller: _____
(Signature)                    Date

Purchaser: _____
(Signature)                    Date

Seller: _____
(Signature)                    Date

Purchaser: _____
(Signature)                    Date




## ADDENDUM ___B___ TO PURCHASE AND SALE CONTRACT

Addendum to Purchase and Sale Contract between:

Angela Moore and Gary Moore _____ (Seller) and

Laura E. Green and Christopher J. Rothermel _____ (Purchaser).

Property Location 327 Fletcher Schoolhouse Road _____ South Woodstock _____ (Property)
                                Street                               City/Town

The Contract Date is 07/14/2018 _____ (insert date from Section 30 of Purchase and Sale Contract).

This addendum is as follows:

Purchaser's and Seller's obligation to close under this contract is contingent upon a Vermont attorney selected and paid for by Purchaser and/or Seller to review the terms and provisions of this contract other than price. If as a result of the Attorney Review, Purchaser or Seller desire to terminate this contract, Purchaser or Seller shall have the right to do so not later than seven (7) calendar days from the Contract Date and not thereafter. Neither Seller nor Purchaser shall have any right to terminate this contract under this Attorney Review provision based on the price set forth in the contract.

This Addendum constitutes a part of the above-referenced Contract. All terms and conditions set forth in the Contract shall remain as set forth in the Contract, except as may be modified by this or any other addendum to the Contract.

Seller: _Angela Moore_____
       (Signature)          Date

dotloop verified
07/14/18 9:05AM EDT
ODRO-FCG9-AW6V-DVGK

Purchaser: _____
       (Signature)          Date

dotloop verified
07/13/18 5:29PM EDT
EUP7-WWPE-KSK4-QMR8

Seller: _____ 7/14/18 9:15_____
       (Signature)          Date

Purchaser: _Christopher J. Rothermel_____
       (Signature)          Date

dotloop verified
07/13/18 5:56PM EDT
ZX70-8YSB-V6ZK-1MQ9

Seller: _____
       (Signature)          Date

Purchaser: _____
       (Signature)          Date

Seller: _____
       (Signature)          Date

Purchaser: _____
       (Signature)          Date



**VermontRealtors®**

# PROPERTY INSPECTION CONTINGENCY ADDENDUM

Purchase and Sale Contract between:

Angela Moore and Gary Moore _____ (Seller) and

Laura E. Green and Christopher J. Rothermel _____ (Purchaser).

Property Location 327 Fletcher Schoolhouse Road _____ South Woodstock _____ (Property)
  Street                                        City/Town

The Contract Date is 07/14/2018 _____ (insert date from Section 30 of Purchase and Sale Contract).

Purchaser's obligation to close under the above Contract is subject to the contingency that Purchaser, at his/her sole expense, obtain an inspection or inspections of the Property by a Vermont licensed property inspector(s) selected by Purchaser. The inspection(s) may include, but shall not be limited to, the **roof, foundation, structural, mechanical, heating, plumbing, electrical, water** (including water potability), **radon** (including air and/or water), **wastewater/septic/sewage, or other systems or improvements on the Property.** If the results of any water potability tests indicate that the water is not potable under Vermont or Federal EPA standards applicable to the water system serving the Property, the water potability shall be deemed unsatisfactory under this Addendum, but not otherwise. If the results of any air radon tests show that the air radon level is not within applicable federal guidelines (less than 4 picocuries per liter) the air radon tests shall be deemed unsatisfactory under this Addendum, but not otherwise.

**INSPECTION DEADLINE:** All Property inspection(s) shall be fully performed and completed, including results of all tests conducted as part of such inspection(s), not later than 21 ____ **CALENDAR DAYS** after the **Contract Date.**

**Check Applicable Option:**

☑ A.  If the results of such inspection(s) are unsatisfactory to Purchaser, Purchaser shall have the right to terminate this Contract, provided Purchaser shall give Seller written notice of Purchaser's decision to terminate this Contract based upon the results of the inspection(s) not later than 5 ____ **CALENDAR DAYS** after the **INSPECTION DEADLINE.**

☐ B.  If the inspection(s) disclose(s) substantial defects or deficiencies which, based upon written, signed estimates from independent qualified inspectors, contractors or other persons specializing in the type of repair needed, would cost, in the aggregate, more than $ _____ to repair, Purchaser shall have the right to terminate this Contract, provided Purchaser shall give Seller written notice of Purchaser's decision to terminate this Contract based upon the results of the property inspection(s) not later than ____ **CALENDAR DAYS** after the **INSPECTION DEADLINE.** As part of such notice, Purchaser shall provide Seller with copies of all such written signed estimates.

☐ C. 

Seller's Initials | | | |     Purchaser's Initials | | | |

**TIME IS OF THE ESSENCE as to the INSPECTION DEADLINE and any NOTICE OF PURCHASER'S TERMINATION of the Contract Pursuant to this Addendum.**

If notice of Purchaser's decision to terminate the Contract based upon the results of the property inspection(s) is not provided to Seller as set forth in option A, B or C above, or if the inspection(s) is not fully performed and completed, including results of all tests conducted as part of such inspection(s), by the INSPECTION DEADLINE, this contingency shall be deemed waived and shall be of no further force and effect.

In the event Purchaser terminates this Contract in accordance with the provisions of this Property Inspection Contingency Addendum, all Contract Deposit(s) shall be forthwith returned to Purchaser subject to rules and regulations applicable to Escrow Agent, the Contract shall be terminated and shall be of no further force and effect. In such case, Seller and Purchaser agree to execute and deliver to Escrow Agent an authorization for delivery of all Contract Deposit(s).

Any notices required to be sent under this Property Inspection Contingency Addendum shall be sent in accordance with Section 29 of this Contract.

Seller hereby agrees to provide access to the Property upon reasonable prior notice for purposes of the above inspection(s). Any damage caused to the Property as a result of the inspection(s) shall be Purchaser's responsibility.

Seller: _Angela Moore_ 
dotloop verified
07/14/18 9:05AM EDT
PERZ-FPUW-HO0T-CGZU
(Signature)          Date

Purchaser: _____
dotloop verified
07/13/18 5:29PM EDT
MEIS-BS8X-9FLS-XRKP
(Signature)          Date

Seller: _____ 7/14/18 9:45
(Signature)          Date

Purchaser: _Christopher J. Rothermel_
dotloop verified
07/13/18 5:56PM EDT
RIOH-ZNXI-NZBJ-ZTA3
(Signature)          Date

Seller: _____
(Signature)          Date

Purchaser: _____
(Signature)          Date

Seller: _____
(Signature)          Date

Purchaser: _____
(Signature)          Date



## VermontRealtors®

### SELLER'S PROPERTY INFORMATION REPORT
#### TO BE COMPLETED BY SELLER

Date Prepared: _____

Seller's Name(s): Gary Moore

Angela Moore

Property Address: 327 Fletcher Schoolhouse Rd _____ S. Woodstock
Street _____ City/Town

Type of Property: ☒ Single Family Residence ☐ Multi-Family Residence (duplex, triplex, etc.)
☐ Condominium/Townhouse ☐ Land Only ☐ Commercial

Use of Property: ☒ Primary Residence ☐ Vacation Property ☐ Rental Property ☐ Other: _____

**INTRODUCTION:** This Report provides information from the Seller based on Seller's personal knowledge concerning the above Property. Unless otherwise disclosed, Seller does not have any expertise in construction, architecture, engineering, surveying or any other skills that would provide Seller with special knowledge concerning the condition of the Property. Other than having owned the Property, Seller has no greater knowledge about the Property than that which could be obtained by a careful inspection performed by or on behalf of a potential buyer. The real estate agents involved with the sale of this Property do not conduct or perform any inspection of the Property. Unless otherwise disclosed, Seller has not inspected or examined those portions of the Property that are generally inaccessible. THIS REPORT DOES NOT CONSTITUTE A WARRANTY OF ANY KIND BY THE SELLER OR BY ANY REAL ESTATE AGENT CONCERNING THE CONDITION OF THE PROPERTY. THIS REPORT IS NOT A SUBSTITUTE FOR A PROPERTY INSPECTION. BUYER HAS THE OPPORTUNITY TO REQUEST THAT SELLER AGREE TO A PROPERTY INSPECTION AS PART OF ANY CONTRACT FOR THE SALE OF THE PROPERTY.

**INSTRUCTIONS TO SELLER:** (1) Complete this form yourself. (2) Answer ALL questions. (3) Disclose conditions that you know about that affect the Property. (4) Attach additional pages to this Report if additional information is provided. (5) IF YOU DO NOT KNOW THE FACTS, WRITE "DON'T KNOW." DO NOT GUESS THE ANSWER TO ANY QUESTION.

THE STATEMENTS IN THIS REPORT ARE MADE BY THE SELLER,
THEY ARE NOT STATEMENTS OR REPRESENTATIONS MADE BY ANY REAL ESTATE AGENT(S).

### 1. LAND (SOILS, DRAINAGE BOUNDARIES AND EASEMENTS)

| | | | | |
|---|---|---|---|---|
| (a) | Has any fill or off-site material been placed on the Property? | ☐ YES | ☐ NO | ☒ DON'T KNOW |
| (b) | Do you know of any sliding, settling, subsidence, earth movement, upheaval or earth stability problems that have affected the Property? | ☐ YES | ☒ NO | ☐ DON'T KNOW |
| (c) | Is the Property located in a federal flood hazard zone or wetlands, public waters or conservation zones designated by federal, state or local statute, regulation or ordinance? | ☐ YES | ☐ NO | ☒ DON'T KNOW |
| (d) | Do you know of any past or present drainage, high water table, or flood problems affecting the Property? | ☐ YES | ☒ NO | ☐ DON'T KNOW |
| (e) | Is the Property served by a road maintained by the municipality? | ☒ YES | ☐ NO | ☐ DON'T KNOW |
| (f) | If the answer to (e) above is "No," how is the road serving the property maintained? ☐ Road Maintenance Agreement ☐ Homeowners/Road Association ☐ Private (by owner) Annual Cost(s): _____ Other (explain): _____ | | | |
| (g) | Are there public or private landfills or dumps (compacted or otherwise) on the Property or on any abutting property? | ☐ YES | ☒ NO | ☐ DON'T KNOW |

Seller's Initials _____ Purchaser's Initials _____

| (h) | Are there any hydrogen (large tanks) on the Property? | ☐YES | ☐NO | ☐DON'T KNOW |
|---|---|---|---|---|
| | If "Yes," Fuel Type: PROPANE | | | |

| (i) | Have there been any underground fuel storage tanks on the Property in the past? | ☐YES | ☐NO | ☒DON'T KNOW |
|---|---|---|---|---|
| | If "Yes," have they been removed? | ☐YES | ☐NO | ☐DON'T KNOW |
| | When?                    By whom? | | | |

| (j) | Do you know the location of the boundary lines of the Property? | ☒YES | ☐NO | ☐DON'T KNOW |
|---|---|---|---|---|

| (k) | Are the boundary lines of the Property marked in any way? | ☒YES | ☐NO | ☐DON'T KNOW |
|---|---|---|---|---|
| | If "Yes," how are they marked?   PAINT | | | |

| (l) | Has the Property been surveyed? | ☒YES | ☐NO | ☐DON'T KNOW |
|---|---|---|---|---|
| | If "Yes," when?        By whom? BRUNO ASSOCIATES | | | |

| (m) | Is a copy of the survey available? | ☒YES | ☐NO | ☐DON'T KNOW |
|---|---|---|---|---|

| (n) | Are there any easements or rights of way affecting the Property? | ☐YES | ☒NO | ☐DON'T KNOW |
|---|---|---|---|---|

| (o) | Are there any boundary line disputes, claims of adverse possession, encroachments, shared driveways, party walls or zoning set back violations affecting the Property? | ☐YES | ☒NO | ☐DON'T KNOW |
|---|---|---|---|---|

Further explanation of any of the above:

## 2. MECHANICAL, ELECTRICAL, APPLIANCES & OTHER SYSTEMS

### HEATING/AIR CONDITIONING/HOT WATER SYSTEMS

| (a) | Heating System (check all that apply): ☒Base Board ☐Hot Air ☒Radiant |
|---|---|
| | ☐Other (explain): _____ Age of Furnace/Boiler: _____ ☒Don't Know |
| | Fuel Type: ☐Oil ☐Natural Gas ☒Propane ☐Electric ☐Wood ☐Wood Pellet ☐Coal ☐Solar |
| | ☐Geothermal ☐Other (explain): _____ |
| | Annual Fuel Usage: _____ Gallons (or other measure) Provider: DEAD RIVER |
| | Property used: ☒Full Time ☐Seasonally   Fuel consumption may vary by user, number of occupants and weather conditions. |

| (b) | Air Conditioning: ☒YES ☐NO If "Yes," describe (central, heat pump, window, etc.): |
|---|---|
| | └ MAIN HOUSE ~ CENTRAL |

| (c) | Hot Water System (check all that apply): ☒Hot Water Tank ☒Domestic/Off Boiler ☐On Demand |
|---|---|
| | Age of Hot Water System: _____ ☒Don't Know |
| | Fuel Type: ☐Oil ☐Electric ☐Natural Gas ☒Propane ☐Coal ☐Solar ☐Wood Pellet ☐Other |
| | Hot Water Tank is: ☒Owned ☐Rented If rented, from whom: _____ Monthly rental fee: $ _____ |

| (d) | Alternative Energy System(s) (check all that apply): ☐Solar ☐Wind ☐Hydroelectric ☐Geothermal ☐Unknown |
|---|---|
| | Energy returned to grid: ☐YES ☐NO |

| (e) | Electrical System: Electrical service panel has: ☐Fuses ☒Circuit Breakers ☐Other (explain) |
|---|---|
| | Main Breaker Amperes: 200 Amps ☐Don't Know |

| (f) | Are you aware of any problems or conditions that affect any of the above systems? ☐YES ☒NO If "Yes," explain in detail: |
|---|---|
| | |
| | Annual electricity usage: $ _____ Electric utility provider: GREEN MOUNTAIN POWER |
| | Property used: ☒Full Time ☐Seasonally Electricity consumption may vary by user, number of occupants, number of appliances and weather conditions. |

### TELEPHONE / INTERNET / TELEVISION

| (g) | Is landline telephone service present at the Property? ☒YES ☐NO If "Yes," current provider: COMCAST |
|---|---|
| (h) | Is cellular telephone service available at the Property? ☒YES ☐NO If "Yes," list available providers: VERIZON - EXTENDER |
| (i) | Is internet service available at the Property? ☒YES ☐NO If "Yes," current provider: COMCAST |
| | If "Yes," service is: ☐Dial Up ☒Broadband ☒Cable ☐Satellite ☐DSL |
| (j) | Is television service available at the Property? ☒YES ☐NO If "Yes," current provider: COMCAST |
| | If "Yes," source is: ☐Antenna ☒Cable ☐Satellite ☐DSL |

Seller's Initials [initials]   [initials]   [ ]   [ ]

Purchaser's Initials [initials 07/10/18 3:12AM EDT]   [initials 07/10/18 2:13PM EDT]   [ ]   [ ]

| (k) | OTHER EQUIPMENT AND APPLIANCES INCLUDED IN SALE

Check the items that will be included in the sale of the Property:

☒ Electric Garage Door Opener – Number of Transmitters 2 ☒ Security Alarm System ☒ Owned ☐ Leased ☐ Humidifier
☐ Dehumidifier ☐ Lawn Sprinklers ☐ Automatic Timer ☒ Smoke Detectors – How Many? _____ ☐ Whirlpool Bath
☐ Swimming Pool ☐ Pool Heater ☐ Spa/Hot Tub ☐ Pool/Spa Equipment (list): _____
☒ Refrigerator ☒ Stove ☒ Hood/Fan ☒ Microwave Oven ☒ Dishwasher ☒ Garbage Disposal ☐ Trash Compactor
☐ Washer ☐ Dryer ☐ Central Vacuum ☒ Freezer ☐ Intercom ☐ Ceiling Fans ☐ Woodstove ☒ Sump Pump ☒ Well Pump
☐ Satellite Dish ☒ Indoor/Outdoor Grill ☒ Attic Fan(s) ☐ Window A/C
☐ Wood/Gas/Pellet/Other Stove (describe): _____
OTHER: _____
Are any of the items that will be included in the sale of the Property in need of repair or replacement? ☐ YES ☒ NO
If "yes," explain in detail: _____

List equipment and appliances, including any AC units, that will be excluded from the sale of the Property:

## 3. STRUCTURAL COMPONENTS

Check any of the following items that have significant defects or malfunctions or that need significant repair:
☐ Foundation ☐ Slab ☐ Chimney ☐ Fireplace ☐ Interior Walls ☐ Ceilings ☐ Floors
☐ Windows ☐ Doors ☐ Storms/Screens ☐ Exterior Walls ☐ Driveway ☐ Sidewalks ☐ Pool ☐ Roof
☐ Outside Retaining Walls ☐ Other Structures/Components: _____
If any of the above items are checked, describe the defect, malfunction or item(s) that need significant repair:

Has there ever been damage to the Property or any of the structures from fire, wind, floods, earth movements or landslides?
☐ YES ☐ NO ☒ DON'T KNOW If "Yes," explain in detail, including any repairs: _____

BASEMENT/CELLAR/CRAWL SPACE:
Has there ever been any water leakage, accumulation of water, dampness or visible mold within the basement, cellar or any crawl space?
☐ YES ☒ NO If "Yes," explain in detail: _____

Have there been any repairs or other attempts to control any water or dampness within the basement, cellar or crawl space?
☐ YES ☐ NO ☐ DON'T KNOW If "Yes," explain in detail, including any repairs:
_In The Summer we run a dehumidifier_

Are any of the above recurring problems? ☐ YES ☐ NO If "Yes," what are the problems and how often have they recurred?

Has paint containing lead been used on the Property? ☐ YES ☐ NO ☒ DON'T KNOW
ROOF: ☐ Shingle ☐ Slate ☒ Metal ☐ Tile ☒ Other (describe) _WOOD SHINGLE_ ☐ Don't Know
Approximate age of roof? _10 – 13 YEARS_
Has the roof ever leaked since you have owned the Property? ☐ YES ☒ NO ☐ DON'T KNOW
If "Yes," explain: _____
Has the roof been replaced or repaired since you have owned the Property? ☐ YES ☒ NO ☐ DON'T KNOW
If "Yes," when? _____
Are there any current problems with the roof? ☐ YES ☒ NO ☐ DON'T KNOW
If "Yes," explain: _____

## 4. WATER SUPPLY

Special Notice: Water supplies, especially those that are not public or municipal supplies, are affected by many conditions about which Seller may have no knowledge or have any ability to control. These water supply systems can change, deteriorate or fail, often with no warning signs. *Seller makes no warranty or representation whatsoever that the water supply, including quality or quantity, will operate or continue to function for any period of time.* Inspection of these systems by a qualified inspector is strongly recommended. As required

Seller's Initials [ ] [ ] [ ] [ ]          Purchaser's Initials [ 07/10/18 9:12AM EDT ] [ CJR 07/10/18 2:13PM EDT ] [ ] [ ]

by law, any seller with a potable well in that is the subject of a purchase and sale shall provide the Purchaser with an informational brochure developed by the Vermont Department of Health regarding Testing Water from Private Water Supplies within 72 hours of the execution of a contract for the purchase of the Property.

TYPE OF WATER SYSTEM  The Property is connected to and serviced by (check all applicable boxes):
☐ Public or Municipal ☐ Community ☐ Private ☐ Shared
☒ On-site ☐ Off-site ☒ Drilled Well ☐ Dug Well ☐ Spring ☐ Lake/Pond ☐ Lake Well ☐ None ☐ Don't Know
Water System Features is : ☐ Cistern/Reservoir/Holding Tank ☒ Water Softener/Conditioner ☐ Reverse Osmosis ☐ Infrared Light
☐ Ultraviolet ☐ Other: _____ ☐ None ☐ Don't Know
Water Pipes are: ☒ Copper ☐ Galvanized Metal ☐ Lead ☐ PVC (Plastic) ☐ Combination ☐ Don't Know
If Drilled Well: Drilled by: _____ Tag #: _____ Depth: _____
Gallons Per Minute (at time of driller's report): _____ Date of driller's report: _____

CONDITION OF WATER AND WATER SYSTEM
Has the water been tested for coliform bacteria? ☒ YES ☐ NO ☐ DON'T KNOW
If "Yes," when? _6/7/07_ By whom? _AQUA CHECK_ Results: _ABSENT / 100 m/s_
Has any other water quality or water chemistry testing been done? ☐ YES ☐ NO ☒ DON'T KNOW
If "Yes," when? _____ By whom? _____ Results: _____
Water softener ☒ YES ☐ NO If "Yes," ☒ Own ☐ Rent If rented, from whom: _____ Monthly Rental Fee: $ _____
Are you aware of low pressure in your water system? ☐ YES ☒ NO
Has your water supply ever run out or run low? ☐ YES ☒ NO If "Yes," describe: _____

Describe in detail any other problems you have had with your water system, including water quality or quantity:
_____

Does the water have any odor, bad taste, cloudiness or discoloration? ☐ YES ☒ NO If "Yes," describe in detail:

## 5. SEWER/SEPTIC/WASTEWATER SYSTEM

**Special Notice:** Sewer septic and wastewater systems that are not public or municipal systems are not designed to perform indefinitely and are affected by many conditions about which Seller may have no knowledge or have any ability to control.  In addition, the useful life of these systems is affected by the amount and type of use, soil conditions, maintenance, the inherent design of these systems and many other factors.  *Seller makes no warranty or representation whatsoever that these systems will operate or continue to function for any period of time.*  Inspection of these systems by a qualified inspector is recommended.  State and local permits may be required for sewer, septic and wastewater systems.

TYPE OF SYSTEM  The Property is connected to and serviced by (check appropriate boxes):
☐ Public or Municipal Sewer System ☒ On-site septic/wastewater system ☐ Off-site septic/wastewater system ☐ Septic Tank
☐ New or Alternate Technology (explain technology) _____ ☐ Holding Tanks
☐ Cesspool ☐ Sewage Pump ☐ Dry Well ☐ Conventional  disposal area ☐ Mound System disposal area ☐ At Grade
☐ Other ☐ Don't Know  If other, please explain: _____

CONDITION OF SYSTEM  If other than public or municipal sewer/wastewater system, answer the following:
Date system installed: _Approx  2003 - 2004_ Is the system entirely on your Property? ☒ YES ☐ NO ☐ DON'T KNOW
If "No," where is it?

Has the system been repaired since you have owned the Property? ☐ YES ☒ NO If "Yes," when? _____
What was done? _____ By whom? _____

Type of septic tank: ☐ Concrete ☐ Metal ☐ Fiberglass ☐ Other (describe) _____ ☒ Don't Know
Septic tank capacity (in gallons) _____ ☒ Don't Know
Date Septic Tank Last Inspected? _____ ☒ Don't Know   Reports of last inspection/pumping attached: ☐ YES ☐ NO
Date Septic Tank Last Pumped? ☒ Don't Know   By whom?

To your knowledge, is any portion of the system in need of repair or replacement? ☐ YES ☒ NO If "Yes," describe in detail:
_____

Seller's Initials [initials]   Purchaser's Initials [initials 07/10/18] [initials CJR 07/10/18]

| (a) | Age of Building(s): Main Bldg. _1796_ Additions to Main Bldg. _2003 - 2005_ | | | | |
|---|---|---|---|---|---|
| | Additional Building(s): (a) _2005 - 06_ (b) | | | | |
| (b) | Is Seller currently occupying the Property? If "No," how long has it been since Seller occupied? | ☒YES | ☐NO | | |
| (c) | Has Seller built or caused to be built any of the buildings on the Property, or made any additions, modifications, alterations or renovations to any building on the Property? If "Yes," please explain: _Finished Main House Basement - Barn Basement_ | ☒YES | ☐NO | | |
| (d) | If "yes," did you obtain all necessary permits and approvals for such work? | ☒YES | ☐NO | | |
| (e) | Are any property or development rights (e.g. conservation easements to Land Trusts, etc.) owned by others?. If "Yes," by whom: | ☐YES | ☒NO | | |
| (f) | Has Seller received written notice of any violations of local, state or federal laws, building codes and/or zoning ordinances affecting the Property? | ☐YES | ☒NO | | |
| (g) | Are there any property tax abatements, land use tax stabilization agreements or other special property tax arrangements applicable to the Property? | ☐YES | ☐NO | ☒DON'T KNOW | |
| (h) | Has Seller received notice that the Property will be reassessed by any taxing authority during the next 12 months? | ☐YES | ☒NO | | |
| (i) | Does the property have Urea-Formaldehyde Foam Insulation? | ☐YES | ☐NO | ☒DON'T KNOW | |
| (j) | Does the Property have Asbestos and/or Asbestos Materials in the siding-walls-plaster-flooring-insulation-heating system? | ☐YES | ☐NO | ☒DON'T KNOW | |
| (k) | Has the Property been tested for Radon Gas? | ☒YES | ☐NO | ☐DON'T KNOW | |
| (l) | If "Yes," when? _6-8-2007_ By whom? _RADALINK_  Results: _4.2p Ci/l_ _Acceptable_ | | | | |
| (m) | Does the Property have evidence of mold? | ☐YES | ☒NO | ☐DON'T KNOW | |
| (n) | If "Yes," what has been done about the mold? | | | | |
| (o) | Are you aware of any off-site conditions in your neighborhood/community that could adversely affect the value or desirability of the Property, such as noise, proposed major new development, relocation or major construction of roads or highways, proposed zoning changes, etc.? If "Yes," explain in detail: | ☐YES | ☒NO | | |
| (p) | Is there any infestation by pests that affect the property? If "Yes," explain: | ☐YES | ☒NO | ☐DON'T KNOW | |
| (q) | Do you have any knowledge of any damage to the Property caused by pests? | ☐YES | ☒NO | ☐DON'T KNOW | |
| (r) | Is the Property currently under warranty or other coverage by a licensed pest control company? | ☐YES | ☒NO | ☐DON'T KNOW | |
| (s) | Do you know of any termite/pest control reports or treatments for the Property in the last five years? | ☐YES | ☒NO | ☐DON'T KNOW | |
| (t) | Further explanation of answers to any of the above: | | | | |

## 7. CONDOMINIUMS/SUBDIVISIONS/HOMEOWNERS' ASSOCIATIONS/ROAD MAINTENANCE AGREEMENTS/ROAD MAINTENANCE ASSOCIATIONS

| (a) | Is the Property part of a condominium or other common interest ownership regime or is it subject to covenants, conditions and restrictions (CC&R's)? If "Yes," Condo docs or CC&R's attached? | ☐YES | ☒NO | | |
|---|---|---|---|---|---|
| (b) | Is there any defect, damage, or problem with any common elements or common areas? If "Yes," describe below. | ☐YES | ☒NO | ☐DON'T KNOW | |
| (c) | Is there any condition or claim which may result in an increase in assessment or fees? If "Yes," describe below. | ☐YES | ☒NO | ☐DON'T KNOW | |
| (d) | Are any required stormwater permits current? | ☐YES | ☒NO | ☐DON'T KNOW | |
| (e) | Are there any homeowners' association or "common area" expenses or assessments affecting the Property? | ☐YES | ☒NO | ☐DON'T KNOW | |

Seller's Initials [signatures]  Purchaser's Initials [signatures]
07/10/18 9:12AM EDT    07/10/18 2:13PM EDT

| (f) | Are there any outstanding assessments on the Property? If "Yes," amount: $ | ☐YES | ☒NO | |
|---|---|---|---|---|
| (g) | Are there any anticipated special assessments on the Property? If "Yes," anticipated amount: $ _____ ☐Monthly ☐Quarterly ☐Yearly | ☐YES | ☒NO | |
| | Purpose of special assessments: | | | |
| | Years or term remaining on any outstanding special assessments: | | | |
| (h) | Are there any current actions, disputes or lawsuits pending between the homeowners/ condominium owners' association and any other parties? If "Yes," describe below. | ☐YES | ☒NO | ☐DON'T KNOW |
| (i) | Do you know of any violations of local, state, or federal laws or regulations, condominium rules or CC&R's relating to the Property? If "Yes," describe below. | ☐YES | ☒NO | ☐DON'T KNOW |
| (j) | Contact person/manager for condominium/homeowner association: Name: _____ | | | |
| | Phone number/e-mail: _____ | | | |

Further explanation of any of the above:

IS THERE ANYTHING ELSE THAT SHOULD BE DISCLOSED ABOUT THE CONDITION OF THE PROPERTY? (In answering this question, you should be guided by what you would want to know about the condition of the Property if you were buying it.) ☐YES ☐NO ☐DON'T KNOW OF ANYTHING ELSE. If "Yes," explain:

SELLER'S STATEMENT: Seller is providing the information in this report to reduce the likelihood of DISPUTES or LEGAL ACTION concerning the sale of the Property. The information provided herein does not constitute any warranty, express or implied, by Seller about the Property or any feature of the Property. Seller hereby authorizes any real estate agent to provide a copy of this report to any prospective buyer. IN DELIVERING THIS REPORT TO A BUYER OR PROSPECTIVE BUYER, NO REPRESENTATION IS MADE BY ANY REAL ESTATE AGENT THAT THEY HAVE ANY INDEPENDENT OR PERSONAL KNOWLEDGE ABOUT THE CONDITION OF THE PROPERTY, THAT THEY HAVE MADE ANY INQUIRY OR INVESTIGATION ABOUT THE CONDITION OF THE PROPERTY OR ANY OF THE INFORMATION PROVIDED IN THIS REPORT BY SELLER OR THAT THEY HAVE VERIFIED THE INFORMATION PROVIDED IN THIS REPORT BY THE SELLER. Seller acknowledges that the information provided in this report is correct to the best of Seller's knowledge as of the date signed by Seller.

BUYER/PROSPECTIVE BUYER ACKNOWLEDGES RECEIPT OF A COPY OF THIS REPORT ON THE DATE SET FORTH BELOW. BUYER/PROSPECTIVE BUYER UNDERSTANDS THAT THIS REPORT PROVIDES INFORMATION ABOUT THE PROPERTY MADE BY THE SELLER AS OF THE ABOVE DATE. IT IS NOT A WARRANTY OF ANY KIND BY SELLER OR ANY REAL ESTATE AGENT. THIS REPORT IS NOT A SUBSTITUTE FOR ANY PROPERTY INSPECTION. BUYER/PROSPECTIVE BUYER MAY OBTAIN A PROPERTY INSPECTION. HOWEVER, ANY SUCH INSPECTION MUST BE BY WRITTEN AGREEMENT WITH SELLER. BUYER/PROSPECTIVE BUYER UNDERSTANDS THAT THERE MAY BE MATTERS RELATING TO THE PROPERTY WHICH ARE NOT ADDRESSED IN THIS REPORT.

Seller: _____ 6-30-77   Purchaser: _____ *dotloop verified 07/10/18 9:12AM EDT R9JA-RCE1-SEIK-RP76*
(Signature)   Date   (Signature)   Date

Seller: Angela L. Moore 6-30-77   Purchaser: Christopher J. Rothermel *dotloop verified 07/10/18 2:13PM EDT GQAP-SD4I-OH2O-DFVY*
(Signature)   Date   (Signature)   Date

Seller: _____   Purchaser: _____
(Signature)   Date   (Signature)   Date

Seller: _____   Purchaser: _____
(Signature)   Date   (Signature)   Date

 

## DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS
### *Required Federal Lead Warning Statement*

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

### Seller's Disclosure
#### (initial applicable sections)

1. Presence of lead-based paint and/or lead-based paint hazards:

   a. Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

   b. Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

2. Records and reports available to the Seller:

   a. Seller has provided the Purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

   b. Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

### Purchaser's Acknowledgment
#### (initial applicable sections)

3. Purchaser has received copies of all information listed above.

4. Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*

Seller's Initials

Purchaser's Initials

5. Purchaser has:

a. Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

b. Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

### Agent's Acknowledgment
### (initial)

Agent has informed the Seller of the Seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

### Certification of Accuracy

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information respectively provided by each of them is true and accurate.

Seller: _____ 6-30-18    Purchaser: _____  dotloop verified 07/10/18 9:12AM EDT 1JCR-53HL-L8KJ-3LGW
(Signature)        Date              (Signature)        Date

Seller: _Pamela J Moore_ 6-30-17    Purchaser: _Christopher J. Rothermel_  dotloop verified 07/10/18 2:13PM EDT Q7Z1-O8E-VVKT-FBT6
(Signature)        Date              (Signature)        Date

Seller: _____            Purchaser: _____
(Signature)        Date              (Signature)        Date

Seller: _____            Purchaser: _____
(Signature)        Date              (Signature)        Date

## SCHEDULE A

It being all and the same lands and premises conveyed to Birch Wood, Inc. by Quitclaim Deed from Gary L. Moore and Angela L. Moore, dated March 9, 2017 and recorded in Book 259 at Pages 185-186 of the Woodstock Land Records, and more particularly described therein as follows:

**Parcel 1   Fee Parcel:**

Being all and the same lands and premises conveyed to Gary Moore and Angela Moore by Warranty Deed of Charles E. Buchheit and Susan N. Buchheit dated July 17, 2007 and  recorded in Book 206, Page 8 of the Town of Woodstock Land Records. Said property is further described therein as follows:

Being all and the same lands and premises conveyed to the Grantors, Charles E. Buchheit and Susan N. Buchheit by Warranty Deed of Harrison A. Bubrosky, dated February 25,2002, and recorded February 27, 2002, in Book 156, at Pages 600-601 of the Woodstock Land Records, wherein said lands and premises are more particularly described as follows:

"Being all and the same lands and premises conveyed to the above-mentioned Grantor, Harrison A. Bubrosky, by virtue of the Warranty Deed from Joseph A. Dion and Margaret Louise Dion, dated July 10, 2000 and recorded in Book 143 At Pages 293-294 of the Woodstock Land Records, wherein the within lands and premises are more particularly described as follows:

'"Being all and the same lands and premises conveyed to the above mentioned Grantors, Joseph A. Dion and Margaret Louse Dion, by virtue of a Warranty Deed from Murray Gutman and Ida Gutman, dated May 1, 1975 and recorded in Book 65 at Page 265 of the Woodstock Land Records.

'"Being Lot #1, containing 25.8 acres, more or less, as depicted on the survey entitled 'Boundary Survey in Woodstock, Windsor County, Vermont, for Joseph and Margaret Dion," by Bruno Associates, Inc., dated November 14, 1985, a mylar version of which survey is to [sic] recorded herewith in the Woodstock Land Records.

**Parcel #2   Easement Parcel:**

"Included with this conveyance is the garage easement as well as easement for use and enjoyment of Lot #1 as depicted on the survey referenced, which easement was conveyed to Joseph A. Dion and Margaret L. Dion by virtue of the Quit Claim Deed from Francelia F. Burns dated June 5,1986 and recorded in Book 82 at Pages 426-427 of the Woodstock Land Records.

"The aforementioned Bruno Associates survey is recorded in Map Slide 136 of the Woodstock Land Records."

# EXHIBIT "B"